UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA ELECTRICAL WORKERS PENSION TRUST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THREE BROTHERS ELECTRICAL CONTRACTORS, et al.,<br><br>Defendants. | Case No. 19-cv-06650-JSW<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, REFERRAL ORDER, AND SETTING FURTHER STATUS CONFERENCE**<br><br>Re: Dkt. No. 47 |

Now before the Court for consideration is Plaintiffs' motion for summary judgment. The Court has considered the parties' papers, including the supplemental briefing ordered by the Court, relevant legal authority, the record in this matter, and the parties' arguments at the hearing. For the reasons that follow, the Court GRANTS Plaintiffs' motion.

**BACKGROUND[1]**

On October 16, 2019, Plaintiffs, (1) the Northern California Electrical Workers Pension Trust, the San Francisco Electrical Industry Apprenticeship and Training Trust, the San Francisco Electrical Workers Health and Welfare Trust, the National Electric Benefit Fund, and the National Electric Industry Fund (hereinafter the "Trust Funds"), (2) the San Francisco Electrical Contractors Association, Inc. ("the Association"), (3) the Electrical Industry Service Bureau, Inc., (4) the International Brotherhood of Electrical Workers, Local 6 ("IBEW Local 6"), and (5) John Doherty, filed a Complaint alleging Defendants, Three Brothers Electrical Contractors ("Three

---

[1] Except where noted, the facts are undisputed.

1

Brothers") and Alex Jones ("Jones") (collectively "Defendants"), are delinquent in their employee benefit payment contributions to the Trust Funds. Plaintiffs seek relief pursuant to the Labor Management Relations Act, 1947 ("LMRA"), 29 U.S.C. section 185(c), and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. sections 1132 and 1145.

The Trust Funds are "multi-employer benefit plan[s] created pursuant to the" LMRA and ERISA. (Declaration of Matt Baumberger ("Baumberger Decl."), ¶ 1.) Three Brothers is a sole proprietorship and Jones is its sole owner. (*Id.*, ¶ 11, Ex. E.) On June 28, 2007, Jones, on behalf of Three Brothers, signed a Letter of Assent to collective bargaining agreements ("Inside Agreements") between IBEW Local 6 and the Association. (Baumberger Decl., ¶ 4, Ex. A (Inside Agreements), Ex. B (Letter of Assent); *see also* Declaration of Alex Jones ("Jones Decl."), ¶ 3.) Although Jones is the sole proprietor of Three Brothers, the record shows that Jones was not Three Brothers' only employee. (*See, e.g.,* Declaration of James Capers, ¶ 3, Ex. D; Jones Decl. ¶¶ 5, Exs. G-H.) According to Jones, employees were laid off in 2016 and current employees are not members of Local 6. (Jones Decl., ¶¶ 5, 12, 14, Ex. I.)

Under the terms of the Inside Agreements, Defendants were required to make contributions to the Trust Funds for covered employees. (Baumberger Decl., ¶¶ 4-5, Ex. A (Inside Agreement, June 1, 2014-May 31, 2018 ("2014-18 Inside Agreement"), Art. VI & Appendix A; Inside Agreement June 1, 2018-May 31, 2022 ("2018-22 Inside Agreement"), Art. VI, Appendix A.) Under the terms of the various agreements, if an employer fails to make contributions to the Trust Funds, it will be liable for unpaid contributions, liquidated damages on the unpaid principal, interest, and attorneys' fees. (Declaration of Nancy Finegan ("Finegan Decl."), ¶ 4.)[2] Employers also are required to submit to periodic audits to verify they are complying with their obligation to contribute to the Trust Funds. (*See, e.g.,* Baumberger Decl., ¶ 4, Exhibit A (2014-18 Inside Agreement, Appendix A, Section J; 2018-22 Inside Agreement, Appendix A, Section J).)

The Letter of Assent states it becomes effective on June 28, 2007, and "shall remain in effect until terminated by the undersigned employer giving written notice to [the Association] and

---

[2] Defendants objected to the exhibits submitted with Ms. Finegan's declaration on the basis that the Trust Agreements were terminated. The Court OVERRULES the objections.

1   to the Local Union at least 150 days prior to the then current anniversary date of the applicable
2   approved labor agreement.  (*See* Baumberger Decl., Ex. B.)  The 2018-22 Inside Agreement
3   provides that it:

> shall take effect on June 1, 2018, and shall remain in effect through May 31, 2022, unless otherwise specifically provided for herein.
>
> …
>
> Either party or an Employer withdrawing representation from the Chapter [defined as the Association] or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification of at least one hundred twenty (120) days prior the expiration date of the Agreement or any anniversary date occurring thereafter.

10  (2018-22 Inside Agreement, §§ 1, 2.(a).)

11  In early 2019, Defendants sent letters to IBEW Local 6 and to the Association, in which
12  they stated that "Three Brothers is withdrawing from" both entities.  (*See* Jones Decl., ¶ 8, Ex. F.)
13  On March 15, 2019, Doherty responded and advised Defendants that the attempt to withdraw was
14  not effective.  (Baumberger Decl., ¶ 15, Ex. G.)  On March 20, 2019, and on May 9, 2019, Jones
15  reiterated his desire to withdraw from the 2018-22 Inside Agreement.  (*Id.*, Ex. H.)

16  On August 1, 2019, the Trust Funds' auditor sent a letter to Three Brothers with a demand
17  to conduct a payroll audit, and Defendants refused to comply.  (Declaration of James Capers
18  ("Capers Decl.") ¶¶ 2-4, Ex. A; Baumberger Decl., ¶¶ 4-6, 9.)  On November 24, 2020, the auditor
19  sent Jones an email stating that he would conduct an electronic payroll audit covering the period
20  January 1, 2016, to the present.  (Capers Decl., ¶ 3, Ex. B.)  Defendants responded that Three
21  Brothers did not have any of the required records but would determine which records could be
22  recovered.  (*Id.*, Ex. C.)

23  It is undisputed that Defendants have conducted electrical work in San Francisco since
24  January 1, 2016.  It also is undisputed that Defendants continue to conduct electrical work in San
25  Francisco.  (*See* Capers Decl., ¶¶ 4, 6; Baumberger Decl., ¶¶ 9-10, 12-13, 16.)  Defendants
26  contend they have provided all necessary documents, that any members who were members of
27  IBEW Local 6 were terminated, and that they have made all necessary contributions.
28  The Court will address additional facts as necessary in the analysis.

## ANALYSIS

**A.     Applicable Legal Standards.**

"A party may move for summary judgment, identifying each claim or defense … on which summary judgment is sought." Fed. R. Civ. P. 56(a). A principal purpose of the summary judgment procedure is to identify and dispose of factually supported claims. *See Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. Once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     Plaintiffs Are Entitled to Summary Judgment.**

In general, the LMRA "requires that a union represent a majority of the employer's work force before the union and the employer may lawfully enter into a collective bargaining agreement." *Laborers Health and Welfare Trust Fund for N. Cal. v. Westlake Dev.*, 53 F.3d 979,

4

980 n.1 (9th Cir. 1995) ("*Westlake*").  However, Section 8(f) of the LMRA, 29 U.S.C. section 158(f), authorizes "'pre-hire' agreements in the construction industry regardless of the fact that the union does not yet represent a majority of the employer's work force." *Id.*; *see also Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 3 v. NLRB*, 843 F.2d 770, 773 (3rd Cir. 1988) ("*Deklewa*") (describing a pre-hire agreement as "a contract agreed to by an employer and a union *before* the workers to be covered by the contract have been hired").[3]

In *Deklewa*, the employer (Deklewa) unilaterally repudiated a pre-hire agreement with the plaintiff union, and the plaintiff filed an unfair labor practice charge with the NLRB. *Id.* at 775. The court determined that the NLRB's conclusion that Section 8(f) pre-hire agreements cannot be unilaterally terminated by either party during the term of the agreement was reasonable and upheld that decision. *Id.* at 777-79.  In *Mesa Verde II*, the Ninth Circuit "adopt[ed] *Deklewa* as the law of this circuit and [held] that pre-hire agreements may not be unilaterally repudiated by either a union or an employer prior to its termination or absent an election among the appropriate bargaining unit's employees to reject the union." *Mesa Verde II*, 861 F.2d at 1137; *see also id.* at 1128-37.

If, however, an employer only has a single employee, "[a]s a matter of long-standing policy, the NLRB will not certify or find appropriate a single-person bargaining unit in a representation proceeding" (the "one-employee-unit rule"). *Westlake*, 53 F.3d at 981 n.2 (quoting *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 565 (9th Cir. 1984) ("*Beck*")).  The one-employee-unit rule allows "a construction industry employer who employs a single employee pursuant to a Section 8(f) pre-hire agreement … to repudiate the agreement by conduct sufficient to put the union and the employee on notice that the agreement has been terminated." *Id.* at 982 (quoting *Beck*, 746 F.2d at 566).  Thus, while in general the

> unilateral action of an employer will not render a CBA void and unenforceable, in the unique circumstances of a section 8(f) pre-hire collective bargaining agreement, an employer's unilateral repudiation of such agreement under the one-employee unit rule

---

[3] The *Deklewa* opinion summarizes Section 8(f), the evolution of pre-hire agreements in the construction industry, prior N.L.R.B. interpretations of Section 8(f).  *See Deklewa*, 843 F.2d at 772-75.  The Court will not repeat that summary here.  *See also Mesa Verde Constr. Co. v. N. Cal. Dist. Council of Laborers*, 861 F.2d 1124, 1127 (9th Cir. 1988) (*en banc*) ("*Mesa Verde II*").

renders the agreement void, and the obligation to the ERISA benefit plan also ceases upon repudiation.

*MacKillop v. Lowe's Mkt., Inc.*, 58 F.3d 1441, 1446 (9th Cir. 1995) (citing *Westlake*, 53 F.3d at 984).[4]

Defendants argue they provided notice to IBEW Local 6 in the time required by the Letter of Assent and by the Inside Agreements and, thus, they no longer had any obligation to make contributions to the Trust Funds or to submit to an audit. Defendants are appearing *pro se* and did not explicitly raise the one-employee-unit rule, but they did argue at the hearing that they did not employ any members of IBEW Local 6 after 2016. They also included exhibits in opposition to the motion, which suggest they did not employ members of IBEW Local 6 while the 2018-22 Inside Agreement has been in effect. (*See, e.g.*, Declaration of Alex Jones, Ex. G.)[5]

Defendants bear the burden to show the one-employee unit rule would apply, which also requires that the "purportedly single employee unit is a stable one, not merely a temporary occurrence." *McDaniel Electric*, 313 NLRB 126, 127 (1993); *see also Sheet Metal Workers Org. Trust v. Climate Systems, LLC*, No. C11-1574-RSL, 2012 WL 6056350, at *3 (W.D. Wash. 2012). It is undisputed that Defendants have more than one employee. Although Defendants argue they are not union members, the Court must consider the nature of the work employees performed. *See, e.g., M.R.S. Enters. v. Sheet Metal Workers*, 429 F. Supp. 2d 72, 82-83 (D.D.C. 2006). It also is undisputed that Defendants and their employees continued to perform electrical work between during the term of the 2018 Inside Agreement.

The Court concludes that Defendants have not met their burden to show the one-employee unit rule would apply.

Accordingly, the Court GRANTS Plaintiffs' motion for summary judgment. It is

---

[4] That general rule would not apply if the relevant CBA contained an "interest arbitration clause." *See, e.g., Taylor Sheet Metal, Inc. v. Int'l Ass'n of Sheet Metal, Air, Rail and Transp. Workers Union, Local No. 16*, 774 Fed. Appx. 384, 386 (9th Cir. 2019).

[5] The Court ordered supplemental briefing on this issue to address whether Defendants might be able to rely on the one-employee unit rule for period covered by the 2018-22 Inside Agreement.

6

FURTHER ORDERED that Defendants shall comply with Plaintiffs' audit demands, including but not limited to producing all records and documents demanded by Plaintiff Trust Funds.

The Court FURTHER ORDERS Defendants to pay any unpaid contributions determined to be owed by Defendants to the Trust Funds pursuant to the audit conducted by the Trust Funds' auditors. If disputes arise during the course of any audits, the parties shall present those disputes to Magistrate Judge Robert M. Illman, to whom discovery disputes were referred, for resolution or a report and recommendation as appropriate.

Finally, the Court ORDERS the parties to appear for a telephonic status conference on Friday, July 29, 2022, at 11:00 a.m. The parties shall file joint status reports by no later than July 22, 2022. In those status reports, the parties shall advise the Court whether a referral for a further settlement conference would be appropriate.

**IT IS SO ORDERED**.

Dated: April 15, 2022

_____
JEFFREY S. WHITE
United States District Judge

Cc: Magistrate Judge Robert M. Illman